Locker *v.* Riley.

---

SARAH LOCKER and others, executors,

*v.*

SAMUEL RILEY and others.

Two lots, designated as 19 and 21, were mortgaged by R. to L., and represented by R. as having no prior encumbrance thereon. In fact, 19 was covered, together with other lots, by a prior mortgage, and was subsequently sold thereunder. R. promised to protect the equity of L. (who died before the foreclosure sale), and bought 19, accordingly, at that sale. After the delivery of the master's deed to R., he mortgaged 19 to E.—*Held*, that E. was chargeable with notice of the record of the foreclosure suit, from which it appeared that L.'s mortgage was not satisfied, and also, with notice of L.'s equity against R. by way of estoppel, and—*Held*, also, accordingly, that L.'s mortgage is prior to E.'s, but that in satisfying it 21 must be sold before 19.

---

Bill to foreclose.

*Mr. W. Brinkerhoff,* for complainants.

*Mr. H. Traphagen,* for defendant Evarts.

Locker *v.* Riley.

THE CHANCELLOR.

On the 1st of December, 1873, the defendants, Samuel Riley and his wife, mortgaged, by their mortgage of that date, to Thomas Locker, now deceased, two lots of land, known as Nos. 19 and 21, in block 136, on a map of the Wakeman property, in Jersey City, to secure the payment of Riley's bond of that date, to Locker, conditioned for the payment of $5,500 on the first of December, 1880, with interest payable half-yearly; which sum of $5,500 Locker had lent to Riley. When the mortgage was given, Riley assured Locker that the premises were free from encumbrance. Subsequently, in 1874, the executors of Charles G. Sisson, deceased, filed their bill in this court to foreclose a mortgage which was on lot No. 19 and other lots, but not on lot No. 21, and which was prior to that given by Riley to Locker. Locker was made a party to the foreclosure suit in respect of his mortgage. He interested himself about the protection of his claim therein, and to that end in the establishment of his equity in respect to the order of sale of the premises to raise the money due on the Sisson mortgage; and he provided the money which might be necessary to enable him to buy lot No. 19, if it should be sold. He died, however, before the foreclosure sale. It appears that he relied, too, on Riley, who assured him, and apparently truthfully, of his efforts to protect Locker's mortgage claim under the foreclosure, and gave him assurance also, of his expectations of success. At the sale by the master, under the foreclosure, which sale took place on the 19th of October, 1875, the lot was bought by Riley (Locker was then dead; he died on the 12th of July, in that year) for $130. The master conveyed the property to him by deed dated October 19th, 1875, but not acknowledged until the 6th of November following. On the 3d of November, 1875, three days before the master's deed was acknowledged, Riley mortgaged lot No. 19 to Daniel R. Evarts, to secure the payment of $1,500, and afterwards, and on or about the 19th of September, 1877, conveyed the property to Ann Irving. It

was admitted, on the hearing, that she subsequently reconveyed the property to him.

The question presented for decision is, as to the priority of the complainant's mortgage and Evarts's mortgage upon lot No. 19. Evarts, when he took his mortgage, had notice of the master's deed, and of all the proceedings in foreclosure on which it was based. He had notice that Riley himself was the owner of the mortgaged premises when the foreclosure proceedings began, and that the complainant's mortgage was given by him on the property, and that it was not yet due, was uncancelled of record, and was unpaid. He had notice, therefore, that on the purchase of the property by Riley, that mortgage would be a subsisting encumbrance on the property in Riley's hands. Under those circumstances he took his mortgage with notice of the encumbrance of the complainant's mortgage thereon.

The complainant's mortgage is, therefore, entitled to priority over that of Evarts, but lot No. 21 must be first sold to pay the former.